FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 APR 22 AM 9:30

U.S. DISTRICT COURT
N.D. OF ALABAMA

DAVID L. SANDEFER,           )
                             )
     Plaintiff,              )
                             )
v.                           )     CV96-H-1755-S
                             )
STATE OF ALABAMA DEPARTMENT  )
OF CORRECTIONS,              )
                             )
     Defendant.              )

ENTERED

APR 2 2 1997

----------------------------------------

DAVID L. SANDEFER,           )
                             )
     Plaintiff,              )
                             )
v.                           )     CV96-H-2632-S
                             )
STATE OF ALABAMA DEPARTMENT  )
OF CORRECTIONS,              )
                             )
     Defendant.              )

MEMORANDUM OF DECISION

     Presently before the Court is the March 14, 1997 motion for

summary judgment filed by defendant.  Pursuant to an Order

entered March 17, 1997, the motion was deemed submitted, without

oral argument, on April 14, 1997.


I. Procedural History


     Plaintiff initiated the first of these consolidated actions

on July 8, 1996.  The first complaint alleged that plaintiff had

been terminated from his employment and had suffered other

adverse employment actions as a result of defendant's discrimination in violation of the Americans with Disabilities Act.  Plaintiff filed a second complaint on October 8, 1996, alleging that defendant had taken certain adverse actions against him in retaliation for his earlier EEOC charge and lawsuit.  On the same date, plaintiff moved to consolidate the two cases, and the Court ordered them consolidated on October 11, 1996.

Defendant filed motions for summary judgment in both cases on March 14, 1997.  Because the two cases arise from essentially the same factual background, the Court will discuss the two cases and the two motions for summary judgment together in this Memorandum.

## II. Standards for Evaluating a Summary Judgment Motion

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine

2

issue of material fact.  Celotex, 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a

3

directed verdict if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to

4

withstand a directed verdict, or the non-moving party may come
forward with additional evidence sufficient to withstand a
directed verdict motion at trial based on the alleged evidentiary
deficiency.  However, when responding, the non-movant can no
longer rest on mere allegations, but must set forth evidence of
specific facts.  <u>Lewis v. Casey</u>, _____ U.S. ____, 116 S. Ct. 2175
(1996).

### III. Relevant Undisputed Facts

Plaintiff began his employment at the Alabama Department of
Corrections ("DOC") in January 1989.  (Sandefer Aff.).
Plaintiff's job as a psychologist required him to provide
counseling to inmates at the St. Clair correctional facility,
which is run by the DOC.  (<u>Id.</u>).

Plaintiff was involved in an automobile accident on March
17, 1995, and suffered head and neck injuries as a result.
(<u>Id.</u>).  Plaintiff missed work on a number of occasions between
March and September 1995 as a result of those injuries.  (<u>Id.</u>).
Plaintiff saw Thomas J. Boll, Ph.D. on May 10, 1995, and Dr. Boll
noted that plaintiff's mental functioning was normal, except for
"complex attentional problems in the context of high demands for
mental speed" and verbal learning and memory problems which
"present[ed] real disruptions to him in attempting to deal with
new and unfamiliar and unstructured circumstances."  (<u>Id.</u>, Ex.

5

B).  Dr. Boll also noted that plaintiff reported that he was able to function normally, but suffered from increased fatigue and was more susceptible to distractions.  (Id., Ex. B).  Plaintiff also saw Dr. Boll a year later, on May 20, 1996.  Dr. Boll remarked that plaintiff's condition was "largely unchanged."  (Id., Ex. A).  He also noted that "Dr. Sandefer did remain at work, and indicates that the quality of his efforts were quite good, but the amount of time that he had to spend and the extra energy that was required in order to accomplish this secondary to his injury was increased."  (Id., Ex. A).

On September 4, 1995, plaintiff had a meeting with his supervisor, Charles Sutton, who expressed concern over plaintiff's attendance record at work.  (Id.).  Sutton criticized plaintiff for taking excessive leave from work, and threatened disciplinary action if plaintiff's attendance did not improve. (Id.).  Plaintiff wrote Sutton a memorandum on September 17, 1995, asserting that he had taken sick leave only because of personal and family medical problems.  (Id., Ex. C).  Sutton wrote two memoranda in response, again critical of plaintiff's number of sick leave days and again threatening plaintiff with discipline if his attendance did not improve.  (Id., Ex. D). Although the DOC has a progressive discipline policy, plaintiff was never subjected to any formal discipline at any level under that policy.  (Sutton Aff.).

At about the same time that plaintiff was criticized by

6

Sutton for his attendance, plaintiff was given additional work duties by Sutton, including being assigned to a state employees' charitable campaign. (Sandefer Aff.). Plaintiff protested that he could not handle these additional duties, but Sutton told him that these new duties were not optional. (Id.).

On November 28, 1995, plaintiff received a letter from Ron Jones, Commissioner of the DOC, indicating that budget shortfalls had necessitated the abolition of approximately twenty positions in the DOC, including plaintiff's. (Id., Ex. E). It is undisputed that plaintiff's supervisor, Charles Sutton, was also terminated as part of the same workforce reduction. Plaintiff, Sutton, and several other employees appealed Jones' decision to the state's personnel board, and were retained at the DOC at their existing pay level pending the decision of the board. (Sutton Aff.; Crockett Aff.). No decision from the board has been issued yet. (Id.).

Plaintiff filed his first EEOC charge On December 3, 1995. (Sandefer Aff.). Plaintiff's affidavit states that he was harassed and intimidated regarding sick leave after this charge was filed, and that he was given additional work over and above his normal duties. (Id.). Plaintiff filed a second EEOC charge on May 21, 1996, alleging that the DOC was retaliating against him for the filing of the December 3, 1995 charge. (Id.). Plaintiff's supervisors threatened to give him a poor performance evaluation one week after this second charge was filed, but

7

relented when plaintiff pointed out that they would be violating a DOC policy by doing so.  (Id.).

Plaintiff gave a deposition in connection with the appeal pending before the state personnel board on May 29, 1996.  In that deposition, the following exchange took place:

> Q. Dr. Sandefer, could you tell me what injuries you were suffering in September of '95?
>
> A. Neck injuries, headaches, and memory disturbance.
>
> * * *
>
> Q. Disturbance.  Okay.  Did your neck injuries in any way interfere with your ability to perform your job?
>
> A. I would always try to -- it did not prevent me from performing the job, but it did interfere with it some because of the pain.
>
> Q. What about your headaches?
>
> A. It did not prevent me from doing any of the functions of my job.
>
> Q. Your memory disturbances?
>
> A. It interfered with but did not prevent me from doing any part of my job.
>
> * * *
>
> Q. Does the fact that you suffer from neck injuries and headaches and memory disturbances in September of '95, did that affect your ability to adequately perform your job?  And you can put it in whatever words you want to put it in.
>
> * * *

8

> A. It did interfere with my ability, but it
> did not prevent my ability to perform my job
> duties.
>
> Q. Do you feel like your job performance was
> adequate?
>
> A. I feel like my job performance was above
> average.

(Sandefer Depo. at 30-32).

The record also contains plaintiff's performance appraisals
from the years 1991-92 to 1995-96.  On each occasion, plaintiff
was given "satisfactory" (as opposed to unsatisfactory) ratings
in all work habit categories, and received an overall rating of
34, which placed him in the "exceeds standards" category of
performance.  (Defendant's Ev. Submission, Exs. 6-10).  The last
performance evaluation was given by Sutton on May 20, 1996.
(Id., Ex. 6).[1]

## IV. Analysis

In reviewing the claims asserted by plaintiff in his two
complaints, the Court will first examine the disability
discrimination claim originally asserted by plaintiff, followed

---

[1]There is some evidence in the record that suggests that
plaintiff reported unethical or illegal billing practices by the
DOC, and that DOC's leadership harbored resentment against
plaintiff as a result.  At best, this evidence is irrelevant; at
worst, it suggests that any adverse employment action taken
against plaintiff was not motivated by disability discrimination
or retaliation.

9

by a discussion of the retaliation claim asserted in plaintiff's
second complaint.

The Americans With Disabilities Act ("ADA") prohibits
discrimination "against a qualified individual with a disability
because of the disability of such individual in regard to ...
procedures, the hiring, advancement or discharge of employees,
employee compensation, job training and other terms, conditions,
and privileges of employment." 42 U.S.C. § 12112(a).
Additionally, under the ADA, an employer discriminates against an
individual with a disability by not making reasonable
accommodations for the known physical or mental limitation on an
otherwise qualified individual's ability to perform the job,
unless the reasonable accommodation would cause an undue
hardship. Harris v. H & W Contracting Co., 102 F.3d 516, 519
(11th Cir. 1996); 42 U.S.C. § 12112(b)(5)(A).

"In order to establish a prima facie case of discrimination
in violation of the ADA, the plaintiff must prove that (1) she
has a disability; (2) she is a qualified individual; and (3) she
was subjected to unlawful discrimination because of her
disability." Morisky v. Broward Co., 80 F.3d 445, 447 (11th Cir.
1996).[2] Defendant's primary argument here is that plaintiff does

---

[2] A plaintiff in an ADA case must demonstrate that the
employer had either actual or constructive knowledge of the
disability or considered the employee to be disabled. Gordon v.
E.L. Hamm & Assoc., 100 F.3d 907, 910 (11th Cir. 1996). It
appears undisputed here that the DOC was aware of plaintiff's
automobile accident and accompanying injuries.

not suffer from any disability.

Plaintiff asserts in his affidavit that his neck pain, headaches, and memory and concentration problems render him disabled. Pursuant to the ADA, a disability is defined to include:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). There has been no evidence submitted as to any other physical or mental impairments nor any indication that plaintiff would qualify as "disabled" under the second or third prong of the definition.

Assuming that plaintiff's memory and concentration problems, neck pain, and headaches all qualify as mental or physical impairments, plaintiff must still demonstrate that they "substantially limit" one or more of his major life activities. Gordon v. E.L. Hamm & Assoc., 100 F.3d 907, 911. The term "major life activity" has been defined by the EEOC to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); see also Gordan v. E.L. Hamm & Assoc., 100 F.3d 907, 911 (11th Cir. 1996).

There is no evidence in the record to indicate that

11

plaintiff experiences difficulty in caring for himself, performing manual tasks, walking, seeing, hearing, speaking, or breathing.  The only major life activity that plaintiff asserts is substantially limited by his impairments is his ability to work.  The EEOC regulations for the ADA define "substantially limited" as "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity."  29 C.F.R. § 1630.2(j)(1)(ii).

Therefore, to prove that he is disabled, plaintiff must show that his impairments substantially restrict his ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  Prichard v. Southern Company Services, 92 F.3d 1130, 1133 (11th Cir. 1996); 29 C.F.R. § 1630.2(j)(3)(I).  "An impairment does not substantially limit the ability to work merely because it prevents a person from performing 'either a particular specialized job or a narrow range of jobs' . . . Nor does the 'inability to perform a single, particular job . . .constitute a substantial limitation in the major life activity of working."  Prichard, 92 F.3d at 1133 (quoting 29 C.F.R. § 1630.2(j)(3)(I) and citing to the § 1630.2(j) App.)

12

Courts, including the Eleventh Circuit, have applied the additional factors set for in the EEOC regulations for use in determining if an individual is substantially limited in the major life activity of working.  These factors are as follows:

(1) the geographic area to which the individual has reasonable access;

(2) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment; and

(3) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical region, from which the individual is also disqualified because of the impairment.

29 C.F.R. § 1630.2(j)(3)(ii); Gordon v. E.L. Hamm & Associates, 100 F.3d 907, 912 (11th Cir. 1996); Pritchard v. Southern Company Services, 92 F.3d 1130, 1133 (11th Cir. 1996); Bolton v. Scrivner, Inc., 36 F.3d 939, 943-44 (10th Cir. 1994).

The undisputed evidence in the record indicates that plaintiff is not significantly restricted even in his ability to perform his current job, and there is no evidence in the record to suggest that plaintiff would experience difficulty in a broad range of jobs.  Plaintiff testified in his deposition in the state personnel board proceedings that he was impaired to some degree, but was still able to perform at an above-average level in his work.  Dr. Boll's report regarding plaintiff's condition in May 1996 similarly reported that plaintiff was able to produce

13

work of good quality, but spent extra time and energy in achieving his prior level of productivity. Also, plaintiff's most recent performance evaluation showed performance at a level identical to that prior to plaintiff's injury.

Given this evidence, the Court must conclude that plaintiff is not significantly restricted in any life activity, including that of working, and so is not "disabled" within the meaning of the ADA. Thus, defendant's motion for summary judgment with regard to the disability discrimination claims asserted in the original complaint must be granted.

The Court now turns to an analysis of plaintiff's retaliation claim. In order to establish a prima facie case of retaliation, plaintiff must offer some evidence that (1) he engaged in statutorily-protected activity, (2) an adverse employment action occurred, and (3) the adverse employment action was causally related to plaintiff's protected activities. See, e.g., Little v. United Technologies, 103 F.3d 956, 959 (11th Cir. 1997). Here, it is undisputed that plaintiff engaged in protected activity by filing an EEOC charge in December 1995.

Plaintiff asserts that the adverse employment actions taken against him consisted of the DOC giving him extra work and intimidating him regarding sick leave. Plaintiff also states that his supervisors threatened to give him a poor performance evaluation, but then thought better of it. The Court will assume, without deciding, that these events were "adverse

14

employment actions."

However, there is absolutely no evidence in the record to suggest a causal link between plaintiff's first EEOC charge and these actions. According to plaintiff's affidavit, the DOC began overloading him with extra work in September of 1995, several months before the filing of the first EEOC charge.[3] Plaintiff's affidavit also asserts that he was intimidated regarding sick leave beginning in September 1995, and that the intimidation "continued" after the filing of the first EEOC charge. Since plaintiff's affidavit makes it clear that the alleged adverse employment actions occurred prior to the filing of his EEOC charge, and simply continued unabated afterward, no reasonable jury could conclude that there was a causal link between plaintiff's EEOC charge and the actions complained of. The record contains no evidence of such a causal link, and so defendant's motion for summary judgment is due to be granted with respect to the retaliation claim asserted in plaintiff's second complaint.

For the foregoing reasons, the Court concludes that defendant is entitled to judgment as a matter of law with respect to the claims asserted in both of plaintiff's complaints. A separate Order and Final Judgment will be entered accordingly.

_____

[3]The only specific instance of extra work cited in plaintiff's affidavit is that the DOC forced him to take some responsibility regarding a state employees' charity drive in August or September 1995.

15

DONE this ____ 22ⁿᵈ ____ day of April, 1997.

SENIOR UNITED STATES DISTRICT JUDGE

16